**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**BATESVILLE DIVISION**

**RICKY LEE YANDELL**                                                             **PLAINTIFF**

**V.**                          **NO. 1:19-CV-00080-BD**

**ANDREW SAUL, Commissioner**
**Social Security Administration[1]**                                    **DEFENDANT**

## ORDER

### I.   Introduction:

On August 5, 2016, Ricky Lee Yandell applied for disability benefits, alleging

disability beginning on August 5, 2016. (Tr. at 13) Mr. Yandell's claims were denied

initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative

Law Judge (ALJ) denied Mr. Yandell's application. (Tr. at 22) Mr. Yandell requested

that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at

4-7) Therefore, the ALJ's decision stands as the final decision of the Commissioner. Mr.

Yandell filed this case seeking judicial review of the decision denying his benefits.[2]

### II.   The Commissioner's Decision:

The ALJ found that Mr. Yandell had not engaged in substantial gainful activity

since the alleged onset date of August 5, 2016. (Tr. at 15) At step two of the five-step

---

[1] On June 6, 2019, Andrew Saul became Commissioner of the Social Security Administration. He is substituted, therefore, as the Defendant. FED. R. CIV. P. 25(d)

[2] The parties have consented to th e jurisdiction of a United States Magistrate Judge.

1

analysis, the ALJ found that Mr. Yandell had the following severe impairments: peripheral neuropathy, obesity, depression, anxiety, degenerative disc disease of the lumbar spine, and carpal tunnel syndrome in the right upper extremity. (Tr. at 16)

After finding that Mr. Yandell's impairments did not meet or equal a listed impairment (Tr. at 16), the ALJ determined that Mr. Yandell had the residual functional capacity (RFC) to perform work at the sedentary level, with limitations. (Tr. at 17-18) He would need to be allowed to use an assistive device when walking. *Id*. He could occasionally reach in all directions with his right arm. *Id*. He could occasionally use his right hand for gross and/or fine manipulation. *Id*. He retained the mental ability to understand, remember, and carry out simple job instructions and to make decisions and judgments in simple work-related situations. *Id*. He could respond appropriately with co-workers, supervisors, and the public, with incidental contact that is not required to perform the work. *Id*. He could respond appropriately to minor changes in the usual work routine. *Id*.

The ALJ found, based on Mr. Yandell's RFC, that he was unable to perform any past relevant work (Tr. at 21) At step five, the ALJ relied on the testimony of a Vocational Expert (VE) to find, based on Mr. Yandell's age, education, work experience and RFC, that he was capable of performing work in the national economy as surveillance system monitor. (Tr. at 22) Thus, the ALJ determined that Mr. Yandell was not disabled. *Id.*

III.   **Discussion**:

A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

B.   Mr. Yandell's Arguments on Appeal

Mr. Yandell maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He maintains that the ALJ should have given more weight to the opinion of Ms. Whitney Melton, APRN; that the ALJ did not properly evaluate Mr. Yandell's subjective complaints; and that the RFC did not incorporate all of Mr. Yandell's limitations.

Mr. Yandell did not require more than conservative treatment for his physical impairments. His doctors prescribed medication and administered steroid injections. (Tr. at 331-352) Those lumbar steroid injections reduced his pain by 50%. (Tr. at 433) Mr. Yandell said, on many occasions, that pain medications helped him. (Tr. at 337, 353, 418)

He told his pain management doctor that he experienced improvement in quality of life and the ability to perform activities of daily living. (Tr. at 353) Clinical examinations showed negative straight-leg raise and normal gait and station; and Mr. Yandell was able to heel-toe walk. (Tr. at 352-353) Muscle tone and strength were within normal limits. (Tr. at 349) The only objective testing conducted revealed mild conditions (neuropathy and carpal tunnel syndrome). (Tr. at 369-374)

Mr. Yandell's doctors told him to avoid bed rest and to engage in light exercise. (Tr. at 352) A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). For part of 2017, Mr. Yandell worked 4-6 hours per day on a farm. (Tr. at 347, 425-429) Working generally demonstrates an ability to perform substantial gainful activity, and it is inconsistent with complaints of disabling pain. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994). He was able to prepare meals, do chores around the house, ride in a car, shop in stores, and visit with friends. (Tr. at 249-254) Such daily activities undermine Mr. Yandell's claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

Mr. Yandell alleges that his depression and anxiety were disabling, but a depression screen was negative; and he told his doctor that depression was "not bad" in October 2017. (Tr. at 331, 405) His mental status exams were normal. (Tr at 353, 366-371, 408) He conceded that he had not sought psychiatric treatment and had never been hospitalized for mental problems. (Tr. at 347-352) The failure to seek regular and

4

continuing treatment contradicts allegations of disability. See *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Ms. Whitney Melton, APRN, completed a check-box medical source statement in August 2017, opining that Mr. Yandell could not perform even sedentary work and that he would need unscheduled breaks. (Tr. at 361-364) She said that anxiety interfered with Mr. Yandell's attention and concentration. *Id.* The ALJ gave Ms. Melton's opinion little weight (Tr. at 20) because her opinion was inconsistent with her own treatment notes showing grossly normal musculoskeletal and mental status exams. (Tr. at 363, 402-408) Ms. Melton treated Mr. Yandell conservatively with medication management, and she only saw him three times. Moreover, a conclusory check-box form has little evidentiary value when it does not cite to medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The ALJ also weighed Ms. Melton's statement against the opinions of the state agency reviewing doctors who found Mr. Yandell capable of light work. (Tr. at 53-54, 99-100) The ALJ struck a balance, assigning an RFC for sedentary work. The weight he gave to Ms. Melton's statement was appropriate.

Likewise, the ALJ properly evaluated Mr. Yandell's subjective complaints. Functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). When evaluating a claimant's

complaints, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the pain; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and the ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id*.

Here, the ALJ discussed Mr. Yandell's treatment, objective medical findings, positive response to medication, and the lack of functional restrictions. He considered that Mr. Yandell had worked during the relevant time-period, and he analyzed Mr. Yandell's ability to perform activities of daily living. The ALJ fulfilled his duty with respect to assessing subjective complaints.

Finally, in light of mild objective testing results, response to treatment, lack of mental health treatment, normal clinical findings, recommendation to exercise, and ability to do activities of daily living, the RFC for sedentary work with some restrictions was appropriate. The RFC was based on a thorough review of the evidence in the record as a whole. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

**IV.   Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly weighed the opinion evidence and evaluated Mr. Yandell's subjective complaints. The RFC fully incorporated Mr. Yandell's limitations. The finding

that Mr. Yandell was not disabled within the meaning of the Social Security Act,

therefore, must be, and hereby is, AFFIRMED. The case is dismissed, with prejudice.

     IT IS SO ORDERED this 29th day of May, 2020.


_____
UNITED STATES MAGISTRATE JUDGE